1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DAVID MICHAEL DURHAM,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

Case No.  CV 15-00567-RAO

**MEMORANDUM OPINION AND ORDER**

## I.

## INTRODUCTION

David Michael Durham ("Plaintiff") challenges the Commissioner's denial of his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") following an administrative law judge's ("ALJ") decision that he was not under a disability as defined in the Social Security Act.  Administrative Record ("AR") 37.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

/ / /

/ / /

/ / /

**II.**

**PROCEEDINGS BELOW**

On May 10, 2012, Plaintiff protectively filed a Title II application for DIB, alleging disability beginning June 1, 2011 (his alleged onset date ("AOD")).  AR 22.  Plaintiff protectively filed a Title XVI application for SSI on July 11, 2012, alleging the same AOD.  *Id.*  Plaintiff's applications were denied initially on September 21, 2012, and upon reconsideration on August 22, 2013.  *Id.*  On September 3, 2013, Plaintiff filed a written request for hearing, which was held on June 5, 2014.  *Id.*  Represented by counsel, Plaintiff appeared and testified at the hearing, as did an impartial medical expert and impartial vocational expert ("VE").  *Id.*  On June 19, 2014, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act,[1] from his AOD through the decision date.  *Id.* at 37-38.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  *Id.* at 1-6.  Plaintiff filed the instant action in this Court on April 10, 2015.  Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled.  20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD.  AR 24.  At **step two**, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus; sensory neuropathy; edema and dermatitis in lower extremities; degenerative disc disease of the lumbar spine; arthritis of ankles, hands, and cervical spine; obesity; status post ankle fracture with fusion; insomnia; depressive disorder; and anxiety disorder.  *Id.*  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

1
2
3

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 25 (citations omitted). At **step four**, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

4
5
6
7
8
9
10
11
12
13
14

> [P]erform a reduced range of sedentary work…. Specifically, the claimant can lift and or carry 20 pounds occasionally and 10 pounds frequently; he can stand and or walk two hours in an eight hour day, with the use of a cane as needed; he can sit for six hours in an eight hour day, with the ability to elevate his feet six inches off the floor and the ability to stand and stretch every hour, estimated to take one to three minutes per hour; he can occasionally climb stairs; he can never climb ladders, ropes, and scaffolds; he can occasionally balance; he can frequently stoop, kneel, crouch, and crawl; he cannot do any forceful gripping, grasping, or twisting bilaterally; he can frequently perform fine and gross manipulation, bilaterally; he must avoid concentrated exposure to unprotected heights and work around moving, dangerous machinery; and he is limited to moderately complex tasks of specific vocational preparation level 4 or less.

15
16
17
18

*Id*. at 27. Based on his RFC and the VE's testimony, the ALJ found that Plaintiff is capable of performing past relevant work as a telemarketer. *Id.* at 37. Accordingly, the ALJ did not proceed to **step five**, and instead, found that Plaintiff had not been under a disability from his AOD through the date of the ALJ's decision. *Id*.

19
20

### III.

### STANDARD OF REVIEW

21
22
23
24
25
26
27

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc.*

28

3

*Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.

## DISCUSSION

Plaintiff argues that the ALJ erred in: (1) rejecting the opinions of his treating internist; and (2) finding his subjective complaints not credible.  *See* Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 10-20, Dkt. No. 24.  The Commissioner contends that this Court should uphold the ALJ's assessment of the treating physician's opinions and her credibility assessment.  *See* Memorandum in Support of Defendant's Answer ("Def. Memo.") at 1-12, Dkt. No. 25.

### A.   **Plaintiff's Treating Physician's Opinions**

Plaintiff contends that the ALJ's RFC determination is based on an erroneous rejection of the physical and mental function assessments of his treating physician,

4

Larry Lerno, M.D. *See* Pl. Memo. at 10-16. The Commissioner, in turn, contends that this Court should affirm the ALJ's decision because Dr. Lerno's opinions were contradicted by four other doctors, and the ALJ gave specific and legitimate reasons supported by substantial evidence for discounting them. *See* Def. Memo. at 1-9.

## 1. <u>Applicable Law</u>

Courts give varying degrees of deference to medical opinions depending on the type of physician providing the opinion: (1) "treating physicians" who examine and treat; (2) "examining physicians" who examine, but do not treat; and (3) "non-examining physicians" who neither examine nor treat. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). A treating physician's opinion is generally entitled to greater weight than a non-treating physician's opinion, and an examining physician's opinion is generally entitled greater weight than a non-examining physician's opinion. *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). If a treating physician's opinion is contradicted by another medical opinion, an ALJ must give "specific and legitimate reasons" for rejecting it. *Orn,* 495 F.3d at 633. If a treating physician's opinion is not contradicted, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830.

## 2. <u>October 23, 2012 Letter Opinion</u>

On October 23, 2012, Dr. Lerno wrote a letter addressed "To Whom it May Concern" (the "Letter Opinion") stating that Plaintiff had been a patient of his since "July of 2006." AR 491. Dr. Lerno further stated that Plaintiff "has severe diabetic peripheral neuropathy with exquisitely severe bilateral feet pain as well as pedal numbness and paesthesias[.]" *Id*. According to Dr. Lerno, Plaintiff's condition had responded poorly to treatment. *Id*. Dr. Lerno then opined that Plaintiff was "unable to work at this time because of []his pain and, in reviewing previous clinic notes, it seems likely that he has been unable to obtain or maintain useful employment from the time of our first visit in 2006." *Id*. Dr. Lerno assessed Plaintiff as "completely / / /

5

and permanently disabled and unemployable[,]" and clarified that his "neuropathy is clearly unrelated to alcohol or drug abuse[.]" *Id.*

### 3. Impairment Questionnaire

On April 9, 2014, Dr. Lerno filled out an impairment questionnaire regarding Plaintiff's impairments. *Id.* at 1219-23. Dr. Lerno noted that he had seen Plaintiff two to three times per year since July 19, 2006, and had last seen him on March 28, 2014. *Id.* at 1219. Dr. Lerno diagnosed diabetic peripheral neuropathy, type-two diabetes, right ankle arthritis, cervicalgia due to degenerative disease of the cervical spine, chronic low back pain due to degenerative joint disease, and depression and anxiety related to his chronic pain syndrome. *Id.* Dr. Lerno noted that Plaintiff's symptoms were severe bilateral foot pain, chronic right ankle, neck, and back pain, depressed mood, and anxiety; that Plaintiff's pain was aggravated by standing and walking; and that Plaintiff had undergone physical therapy for his ankle, but had no other consultations because he "spends most of his time in Arizona." *Id.* at 1220.

Dr. Lerno opined that, "in an 8-hour workday," Plaintiff can perform a job in a seated position for less than one hour,[2] and a job standing and/or walking for less than one hour. *See id.* at 1221. Regarding his opinion as to jobs performed from a seated position, Dr. Lerno noted that "sitting does not exacerbate [Plaintiff's] pain, but the constant foot burning makes it very difficult for him to concentrate on any task." *Id.* Dr. Lerno also opined that Plaintiff would need to get up from a seated position to move around every one to two hours, and that Plaintiff would be able to return to a seated position in a matter of minutes on each occasion. *Id.*

Regarding Plaintiff's exertional limitations, Dr. Lerno opined that Plaintiff could lift and/or carry zero to five pounds "occasionally," but could "never/rarely" lift and/or carry more than five pounds. *Id.* Dr. Lerno further opined that Plaintiff had no significant limitations in reaching, handling, or fingering, but noted that his

[2] Dr. Lerno noted that it is "medically necessary for [Plaintiff] to avoid continuous sitting in an 8-hour workday[.]" AR 1221.

symptoms would increase if he was placed in a competitive work environment. *Id.* at 1222.[3]  In an average eight-hour workday, Dr. Lerno opined that Plaintiff's pain and other symptoms would frequently interfere with his attention and concentration, and noted that Plaintiff would need to take unscheduled breaks every 15-30 minutes for 5-10 minutes at a time. *Id.*  Due to his impairments and/or treatment, Dr. Lerno opined that Plaintiff would need to be absent from work more than three times per month. *Id.* at 1223.  Dr. Lerno further noted that Plaintiff's severe pain produces depressed mood, anxiety, and difficulty concentrating. *Id.*  Dr. Lerno concluded by stating that his responses to the questionnaire dated back to 2006. *Id.*

### 4.   Analysis

Both parties acknowledge that Dr. Lerno's opinions are contradicted by other medical opinions. *See* Pl. Memo. at 10; Def. Memo. at 1.  Thus, the ALJ's reasons for according Dr. Lerno's opinions reduced weight must be specific and legitimate. *Orn,* 495 F.3d at 633.  Overall, the ALJ's decision appears to give seven reasons.

### a.     Reason No. 1: Opinion on an Issue Reserved to the Commissioner

The ALJ noted that "Dr. Lerno is a treating physician, whose opinion would generally be given more weight because it is more likely to be based on a detailed, longitudinal picture of the claimant's impairments," but concluded that Dr. Lerno's Letter Opinion should be accorded reduced weight, in part, because in it he opines that Plaintiff was unable to work, permanently disabled, and unemployable—and:

> [A]n opinion by a medical source that a claimant is disabled or unable to work does not mean that a claimant is disabled.  The determination of disability is an issue reserved to the Commissioner and, as such, is an administrative finding that directs the determination or decision of disability.

AR 33 (citations omitted).

---

[3] Dr. Lerno noted that "increasing psychosocial stress will increase [Plaintiff's] pain level and anxiety, in all probability."  AR 1222.

Plaintiff generally does not dispute the ALJ's argument on this point.  *See* Pl. Memo. at 11 ("It is conceded that the statements that [Plaintiff] is 'unable to work' due to the pain from his peripheral neuropathy and that 'it seems likely' that he had been 'unable to obtain or maintain useful employment' since 2006 are only marginally useful to an ALJ as fact-finder in the disability inquiry.").  Furthermore, the ALJ is correct that the determination of disability is an issue that is reserved to the Commissioner.  *Thornsberry v. Colvin*, 552 F. App'x 691, 692 (9th Cir. 2014) ("[A] doctor's opinion that a claimant is disabled is not itself a medical opinion but an issue reserved exclusively for the Commissioner.") (citation omitted); *Brown v. Colvin*, 2015 WL 5601400, at *4 (E.D. Cal. Sept. 22, 2015) (finding that a letter from a marriage and family therapist "merely offered the conclusion of a disability, stating plaintiff was unable to work" and that such "disability determinations … are reserved to the Commissioner"); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d); Social Security Ruling ("SSR") 96–5p, 1996 WL 374183, at *15 (July 2, 1996) (a disability determination is a finding reserved to the Commissioner; a statement by a medical source that a person is "unable to work" does not mean they are disabled).[4]

The Court therefore finds that this reason is a specific and legitimate reason to give Dr. Lerno's Letter Opinion reduced weight.

### b.   *Reason No. 2: Letter Opinion Vague and Conclusory*

The ALJ found that Dr. Lerno's Letter Opinion was "vague and conclusory, and does not provide specific work-related limitations for the claimant, or objective findings upon which this opinion is based."  AR 33.  This is a valid reason to reject a treating physician's opinion.  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted) ("[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory,

---

[4] SSRs do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute" and regulations it administers, and are accorded deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

and inadequately supported by clinical findings."); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999) (affirming an ALJ's decision to discredit a physician's opinion because it did not show how plaintiff's "symptoms translate into specific functional deficits which preclude work activity").

Plaintiff contends that the ALJ's decision to reduce the weight given to Dr. Lerno's Letter Opinion based, in part, on this reason was incorrect because his other statement—"that [Plaintiff] suffers 'exquisitely severe bilateral feet pain as well as pedal numbness and paresthesias' that have 'responded poorly to various modalities of treatment offered'—is far more constructive in assessing [Plaintiff]'s symptoms and their resultant limitations."  Pl. Memo. at 11.  But Plaintiff's contention fails because Dr. Lerno did not explain *how* Plaintiff's pain, numbness, and paresthesias translated into limitations that prevent work activity.  *See Morgan,* 169 F.3d at 601; *cf. Smith v. Comm'r of Soc. Sec. Admin.*, 2015 WL 7720502, at *4 (D. Or. Nov. 30, 2015) (finding substantial evidence did not support the ALJ's rejection of a medical opinion as vague because the doctor "opined that plaintiff's left shoulder arthritis and inflammation *will cause a decreased range of motion*," and indicated that an "MRI revealed diffused disc disease, arthritis, and probable nerve impingement, *which results in a decreased range of motion in the neck*") (emphasis added).  Dr. Lerno merely listed characteristics which could limit Plaintiff's ability to work and declared him "completely and permanently disabled and unemployable."  AR 491.

The Court therefore finds that this reason is a specific and legitimate reason to give Dr. Lerno's Letter Opinion reduced weight.

### c.   *Reason No. 3: Plaintiff's Earnings After 2006*

The ALJ accorded less weight to Dr. Lerno's Letter Opinion *and* Impairment Questionnaire, in part, because his opinions concerning Plaintiff's disability status and limitations dated to 2006, but Plaintiff continued to work until 2011.  AR 34.

A contradiction between a treating physician's opinion and "other substantial evidence in the record … constitute[s a] specific and legitimate reason for rejecting

9

the treating physician's opinion[.]"  *Ortiz v. Astrue*, 2012 WL 639508, at *10 (E.D. Cal. Feb. 24, 2012) (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2003)).  Here, Dr. Lerno's two opinions are clearly contradicted by Plaintiff's work history.  In his Letter Opinion, Dr. Lerno states that "it seems likely that [Plaintiff] has been unable to obtain or maintain useful employment from the time of our first visit in [July of] 2006[,]" and in his Impairment Questionnaire, Dr. Lerno states that his opinion regarding Plaintiff's significant limitations applied as far back as 2006.  AR 491, 1223.  However, Plaintiff continued to earn wages, often at substantial gainful activity levels, until 2011.  *See id.* at 266 (2006 ($12,364.18), 2007 ($28,969.91), 2008 ($38,141.37), 2010 ($34,838.62), and 2011 ($6,351.40)).

Plaintiff concedes the earnings finding, but argues: (1) that the date on which an impairment reaches disabling severity is a determination for the ALJ; and (2):

> That his doctor may have affixed an onset date that the ALJ would consider inconsistent with the evidence as a whole does not constitute a valid reason to discredit the opinion of a medical practitioner who, unlike the ALJ, is not fully equipped to render that partially legal determination.

Pl. Memo. at 16.  The determination of disability is indeed an issue reserved to the Commissioner, *see supra* § IV(A)(4)(a), but it is not merely the *ALJ's* disagreement with Dr. Lerno's onset date that affects his credibility.  It is also *Plaintiff's* apparent disagreement therewith.  Dr. Lerno reviewed Plaintiff's records and concluded that he was "unable to obtain or maintain useful employment from the time of our first visit in 2006." AR 491.  Plaintiff, by contrast, continued working until 2011.

The Court therefore finds that this reason is a specific and legitimate reason to give Dr. Lerno's Letter Opinion and Impairment Questionnaire reduced weight.

### d.     Reason No. 4: Minimal Treatment History

The ALJ accorded less weight to Dr. Lerno's Impairment Questionnaire, in part, because he has had a "minimal treatment history" with Plaintiff.  Specifically,

the ALJ noted that Dr. Lerno generally sees Plaintiff "only two to three times" per year, which the ALJ found to be consistent with the "significant gaps" in Plaintiff's treatment history discussed earlier in the ALJ's decision.[5]  *See* AR 28, 30, 34, 1219. In assigning weight to a treating physician's opinion, the regulations permit an ALJ to consider the length and frequency of the treatment relationship.  *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). ("[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  However, the Regulations still require "deference to the treating physician's opinions."  *Orn,* 495 F.3d at 633 (citing 20 C.F.R. § 404.1527; SSR 96–2p, 1996 WL 374188, at *1 ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.")).  Thus, while the ALJ could consider that Dr. Lerno saw Plaintiff only two to three times per year, this is one but factor, and is not alone a specific and legitimate reason to give Dr. Lerno's opinions less weight.

### e.    *Reason No. 5: Routine and Conservative Treatment*

The ALJ also reduced the weight accorded to Dr. Lerno's Letter Opinion and Impairment Questionnaire because his opinions were inconsistent with the record as a whole.  *See* AR 33-34.  The ALJ specifically found that Plaintiff "received routine and conservative treatment for his conditions, which has also been minimal and consisted mostly of [phone requests for] pain medication refills."  *Id.*  An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions.  *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating physician where

---

[5] The ALJ noted that "[a]fter March 2013, there is little medical evidence of record that the claimant received medical health treatment, other than minimal treatment with significant gaps between treatment visits."  AR 30.  As an example, the ALJ noted that Plaintiff was seen in June 2013 "for diabetes management and reported that he thinks he is 'doing better[,]'" but that there are no records thereafter "until September 2013[.]"  *Id.*

1   physician had prescribed conservative treatment and plaintiff's activities and lack
2   of complaints were inconsistent with the physician's disability assessment).  For the
3   reasons discussed below (*see infra* § IV(B)(2)(c)), the Court finds that this reason is
4   a specific and legitimate reason to accord Dr. Lerno's opinions reduced weight.

5         **f.**    **Reason No. 6: Reliance on Plaintiff's Subjective Reports**

6         The ALJ further found that Dr. Lerno heavily relied on Plaintiff's subjective
7   statements as to his symptoms and limitations in preparing the Letter Opinion, and
8   specifically, on an October 2012 phone call from Plaintiff asking for a letter stating:
9   (1) the reason for his disability, (2) that he cannot work for 12 months or more, and
10  (3) that his "disability is not caused by drug or alcohol addiction."  AR 34.

11        In *Reddick v. Chater*, the Ninth Circuit addressed whether an ALJ may reject
12  a medical opinion because it was solicited in connection with a claimant's disability
13  claim.  *Reddick*, 157 F.3d at 726.  The court reviewed previous cases addressing the
14  issue—in particular, *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988), and *Saelee*
15  *v. Chater*, 94 F.3d 520 (9th Cir. 1996)—and clarified that, "in the absence of other
16  evidence to undermine the credibility of a medical report, the purpose for which the
17  report was obtained does not provide a legitimate basis for rejecting it."  *Id*.

18        Here, the fact that Plaintiff "request[ed] a letter from [Dr. Lerno] stating his
19  reason for disability" (AR 646) was one of five reasons the ALJ provided for giving
20  Dr. Lerno's Letter Opinion less weight.  The Court has found the other four reasons
21  permissible.  Thus, while this reason would not constitute substantial evidence on
22  its own, the Court finds that it was not legal error for the ALJ to consider it.

23        **g.**    **Reason No. 7: Inconsistency with Activities of Daily Living**

24        The ALJ also found that the opinions in the Impairment Questionnaire were
25  inconsistent with Plaintiff's daily activities, "which indicate that [he] has been able
26  to travel between Arizona and California, take care of his personal needs, prepare
27  simple meals, go out alone, and go shopping."  *See* AR 34.  Inconsistency between
28  a treating physician's opinion and a claimant's daily activities can act as a specific

and legitimate reason to reject the opinion, *see Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001), but a claimant does not need to "be utterly incapacitated to be eligible for benefits." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Here, the Court finds that the daily activities the ALJ identified are not clearly at odds with Dr. Lerno's opinions.

The Commissioner agrees with the ALJ's assessment, and argues that:

> It was reasonable for the ALJ to assume that Plaintiff's interstate travel, for instance, undermined Dr. Lerno's contention that Plaintiff could not sit for a full hour and needed breaks every one to two hours, or that Plaintiff's ability to go shopping, take care of his personal needs, go out alone, and prepare simple meals, undermined Dr. Lerno's belief that Plaintiff was limited to lifting no more than five pounds occasionally.

Def. Memo. at 8. It may be reasonable to assume that interstate travel (*i.e.* traveling between Arizona and California) *could* undermine Dr. Lerno's contention regarding Plaintiff's inability to sit for more than one hour, but it is also reasonable to assume that Plaintiff takes frequent breaks during the trips. Moreover, Plaintiff's ability to shop, take care of personal needs, go out alone, and prepare simple meals does not necessarily involve, as the Commissioner seems to assume, lifting over five pounds.

The Court finds that this reason *is not* a specific and legitimate reason to give Dr. Lerno's Impairment Questionnaire reduced weight. This error was harmless, however, because the ALJ also gave other independent, legally sufficient reasons to give the Letter Opinion and Impairment Questionnaire less weight. *See Howell v. Commissioner Social Sec. Admin.,* 349 F. App'x 181, 184 (9th Cir. 2009) (ALJ's erroneous rationale for rejecting treating physician's opinion was harmless because the ALJ gave other legally sufficient reasons for rejecting it) (citation omitted).

In sum, the Court finds that the ALJ did not err in giving "reduced weight" to Dr. Lerno's Letter Opinion and Impairment Questionnaire.

1   **B.**     **Plaintiff's Credibility**

2           Plaintiff also argues that the ALJ's finding that his subjective complaints are

3   not fully credible is unsupported by clear and convincing evidence.  *See* Pl. Memo.

4   at 16-20.  The Commissioner argues that the ALJ's reasons for finding Plaintiff not

5   fully credible are supported by substantial evidence.  *See* Def. Memo. at 9-12.

6           "In assessing the credibility of a claimant's testimony regarding subjective

7   pain or the intensity of symptoms, the ALJ engages in a two-step analysis."  *Molina*

8   *v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572, F.3d

9   586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has

10  presented objective medical evidence of an underlying impairment which could

11  reasonably be expected to produce the pain or other symptoms alleged."  *Treichler*

12  *v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (2014) (quoting *Lingenfelter,*

13  504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the ALJ does not

14  find evidence of malingering, the ALJ must provide specific, clear and convincing

15  reasons for rejecting a claimant's testimony regarding the severity of his symptoms.

16  *Id*.  The ALJ must identify what testimony was found not credible and explain what

17  evidence undermines that testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208

18  (9th Cir. 2001).  "General findings are insufficient."  *Lester,* 81 F.3d at 834.

19          "After careful consideration of the evidence," the ALJ found that Plaintiff's

20  "medically determinable impairments could reasonably be expected to cause [his]

21  alleged symptoms;" but found that Plaintiff's "statements concerning the intensity,

22  persistence, and limiting effects of [his] symptoms are not entirely credible for the

23  reasons explained in this decision."  AR 32.  The ALJ explained that: (1) Plaintiff's

24  daily activities are not limited to the extent one would expect; (2) Plaintiff received

25  unemployment compensation during the relevant period; and (3) Plaintiff primarily

26  received routine, conservative treatment.  *Id.* at 28, 32.  No malingering allegation

27  was made, and therefore, the ALJ's reasons must be "clear and convincing."

28  / / /

### a.     Reason No. 1: Plaintiff's Daily Activities

The ALJ found that Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 32.  The ALJ specifically noted that Plaintiff "is able to take care of his personal needs, take care of a dog, prepare simple meals, … do simple household chores[,] … drive, go out alone, and handle money." *Id.*

Inconsistency between symptom allegations and daily activities may act as a clear and convincing reason to find claimants less credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  But the mere fact that "a plaintiff has carried on certain daily activities, such as grocery shopping, … does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant need not be "utterly incapacitated" to be eligible for benefits under the Social Security Act. *Fair,* 885 F.2d at 603.  "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.*  However, an ALJ may discredit a claimant's testimony if she "reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1112-13.  The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former …, can get help from other persons …, and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison,* 759 F.3d at 1016).

The Court finds that the relatively mundane activities identified by the ALJ are not of a character that suggests a lack of credibility.  An ability to perform basic self-care tasks, tend to a pet, maintain a minimal level of cleanliness at home, drive, be alone in public, and manage finances simply does not clearly signal an ability to perform in the more grueling environment of the workplace. *Fair,* 885 F.2d at 603;

1   *see also Garrison,* 759 F.3d at 1016 ("We have repeatedly warned that ALJs must
2   be especially cautious in concluding that daily activities are inconsistent with
3   testimony about pain, because impairments that would unquestionably preclude
4   work and all the pressures of a workplace environment will often be consistent with
5   doing more than merely resting in bed all day.") (citation omitted).

6          The ALJ also noted, however, that although Plaintiff alleged "symptoms and
7   limitations preventing all work, the record reflects that [he] has been able to travel
8   since the [AOD]."  AR 32.  The ALJ specifically identifies an August 2011 trip to
9   Las Vegas Plaintiff took with his children and Plaintiff's occasional trips back to
10  California during the time period that he lived with his parents in Arizona.  *Id*.  The
11  ALJ stated that while "travel and a disability are not necessarily mutually exclusive,
12  the claimant's decision to travel back and forth between Arizona and California, as
13  well as take a trip to Las Vegas, tends to suggest that [his] alleged symptoms and
14  limitations may have been overstated."  *Id*.  Absent findings as to *how* Plaintiff's
15  travels undermine his credibility, however, this Court cannot find this reason clear
16  and convincing.[6]  *Santos v. Colvin*, 2015 WL 3886939, at *6 (C.D. Cal. June 24,
17  2015) ("Merely referencing Plaintiff's [Mexico] trips was insufficient to establish a
18  conflict with Plaintiff's testimony.") (citations omitted); *Chalfant v. Astrue*, 2011
19  WL 61612, at *6 (C.D. Cal. Jan. 6, 2011) ("[P]laintiff's vacation to Hawaii does not
20  inherently negate her allegations of pain and other symptoms, and the ALJ provided
21  no explanation as to why she found plaintiff's ability to partake in such a vacation

_____

23  [6] The ALJ's record citations provide little context.  Regarding Plaintiff's trip to Las
    Vegas, the page of the record the ALJ cites states: "Recently [Plaintiff's] kids took
24  him to Las Vegas."  AR 453.  Regarding Plaintiff's "occasional" trips to California,
25  the ALJ cites two records.  The first is a progress note from a March 2013 Arizona
    appointment which states only that Plaintiff "is going to California next week and
26  wants to know what is causing his dizziness."  *Id*. at 1375.  The second is a progress
    note from a September 2013 California appointment which states only that Plaintiff
27  is "[s]till living most of the time with his parents in AZ" and "[p]lans to go back to
28  AZ in 3 days."  *Id*. at 1159-60.

incompatible with plaintiff's complaints. Nor is it apparent from plaintiff's testimony about her trip that she spent a 'substantial part' of her time performing any physical task that translates to the work environment") (citation omitted).

The Court therefore finds that this reason is not a clear and convincing reason to discount Plaintiff's credibility.

### b.   *Reason No. 2: Unemployment Benefits*

The ALJ noted that Plaintiff "received unemployment compensation" during the relevant time period and although receipt of such "benefits does not necessarily preclude receipt of Social Security disability benefits," it indicates that he certified that "he was willing and able to engage in work activity, which is inconsistent with a claim for disability." AR 32. A claimant's receipt of unemployment benefits is a reason to discount her credibility *only if* she holds herself out as available for full-time work. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008); *Copeland v. Bowen,* 861 F.2d 536, 542 (9th Cir. 1988). If the record "does not establish whether [a claimant] held himself out as available for full-time or part-time work," the use of unemployment benefits as a basis for a "credibility finding is not supported by substantial evidence." *Id.* Further, while "'*continued* receipt' of unemployment benefits casts doubt on a claim of disability, … the receipt of some unemployment benefits, followed by the subsequent refusal of … benefits, actually supports a claim of disability." *Deloach v. Colvin*, 2015 WL 4040615, at *8 (C.D. Cal. July 1, 2015) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)).

At the hearing, Plaintiff could not recall the exact date he stopped working, but the record cited by the ALJ to support her unemployment benefits argument—a Social Work Outpatient Note dated August 30, 2011—states that Plaintiff reported being unemployed since March 2011. *Id.* at 51, 451. In that August 30, 2011, note, the social worker further stated that Plaintiff:

> [R]eported he was receiving unemployment for a few months however he is unable to return to work. He further reported he

17

1
2

> is in the process of applying for social security disability, and he wanted to apply for SDI for income as he is applying for social security disability.

3
4
5
6
7
8
9
10

*Id.* at 451.  Similarly, when he was asked if he had received unemployment benefits at the hearing, Plaintiff said that he "had a little thing of unemployment[,]" but then realized and was told by his doctor that he should not be working.  *Id.* at 63.  Based on the foregoing, it is not clear whether Plaintiff held himself out as being available for full-time or part-time work.  Moreover, the record appears to show that Plaintiff received *some* benefits—from approximately March 2011 to June 2011, his AOD—but refused benefits upon deciding that he could no longer work.

11
12

The Court therefore finds that this reason is not a clear and convincing reason to discount Plaintiff's credibility.

13

### c.    *Reason No. 3: Routine and Conservative Treatment*

14
15
16
17
18
19
20
21
22

Finally, the ALJ stated that "[Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled person."  AR 32.  While Plaintiff "has received treatment for his physical impairments," it "has been routine and conservative, consisting mostly of medication refills for pain medication."  *Id.* at 28.[7]  This is a sufficient reason to discount a claimant's credibility.  *See Parra v. Astrue,* 481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting plaintiff's

/ / /

23
24
25
26
27
28

---

[7] The ALJ noted that "most of the claimant's medical treatment from his [AOD] … through September 2013, has consisted mostly of telephone calls to his primary care physician for pain medication refills, rather than in person visits.  The medical evidence of record indicates that approximately every month, from June 2011 through September 2013, the claimant phoned in requests for pain medication refills."  AR 28 (citations omitted).  Plaintiff concedes this point.  *See* Pl. Memo. at 11 ("[T]he majority of [Plaintiff]'s communications with the VA's primary care clinic have been in the furtherance of refilling his prescribed medications[.]").

1    complaint "that she experienced pain approaching the highest level imaginable" as

2    "inconsistent with the 'minimal, conservative treatment' that she received").

3          Plaintiff rejects the ALJ's finding on three grounds.  First, Plaintiff states that

4    "the ALJ apparently overlooks the fact that he did undergo an open reduction and

5    internal fixation for his right ankle, an operation which ultimately failed to remedy

6    his ankle function," and cites a February 2012 x-ray and March 2014 imaging study

7    which show arthritis and degenerative changes in the joint.   Pl. Memo. at 12.  But

8    the ALJ did mention Plaintiff's surgery and subsequent right ankle issues.  *See, e.g.,*

9    AR 28-29 (noting that Plaintiff was evaluated for ankle pain, due to his March 2009

10    ankle surgery—which was performed to repair a fracture[8]—in February 2012); 29

11    ("claimant had a mostly normal physical examination, other than a deformity of his

12    right ankle"); 29 ("x-rays of the … right foot indicated … prominent posttraumatic

13    and surgical findings about the ankle joint"); 30 ("x-rays of the claimant's ankles

14    indicated … arthritis of the right ankle").  Moreover, Plaintiff's argument addresses

15    the severity of his right ankle problems, not the nature of his treatment therefor.

16          Here, as noted, the ALJ found that the arthritis and degeneration in Plaintiff's

17    ankle is a severe impairment.  AR 24.  But the ALJ further found that the treatment

18    Plaintiff has received for that severe impairment has been routine and conservative.

19    *Id*. at 32.  And that finding is supported by substantial evidence.  In April 2012, for

20    example, Plaintiff was "advised as to the use of *NSAIDs*, weight loss, and activity

21    modification" as treatment for his ankle.  *Id*. at 28 (emphasis added), 434; *see also*

22    *Parra*, 481 F.3d at 751 (finding treatment of plaintiff's "physical ailments … with

23    an over-the-counter pain medication" constituted conservative treatment).  Also in

24

---

25    [8] Plaintiff "presented to the emergency room with a right ankle fracture dislocation"

26    in March 2009.  AR 402-03.  "Orthopedics was called," Plaintiff was evaluated, his
ankle was splinted, and he was sent home.  *Id*. at 403.  At a follow-up appointment,

27    however, because "he still had a significant amount of swelling," he was admitted.

28    *Id*.  The hospital eventually "took [Plaintiff] to the Operating room and did the open
treatment internal fixation of the bimalleolar fracture[.]"  *Id*.

1   April 2012, Plaintiff was prescribed a rocker bottom shoe orthotic to help increase
2   his mobility.  *See* AR 434, 594.  However, Plaintiff then moved to Arizona and thus
3   did not follow-up on that prescription until 2013.  *Id.* at 29, 1348 (August 8, 2013,
4   Progress Note, noting that: Plaintiff "complains of some mild pain.  He was seen by
5   prosthetics and is awaiting pickup of a[n] orthotic today."); *cf. Burch*, 400 F.3d at
6   681 (finding that the fact that plaintiff's pain was not severe enough to motivate her
7   to seek other treatment forms was "powerful evidence regarding the extent to which
8   she was in pain").  In sum, though the treatment of Plaintiff's ankle when the injury
9   occurred in March 2009 does indeed appear to have been, as he argues, "invasive,"
10   *see* Pl. Memo. at 12, the treatment he has received since then appears to have been
11   minimal, consisting mostly of pain medications.  *See, e.g., Martinez v. Colvin*, 2014
12   WL 2533784, at *3 (C.D. Cal. June 5, 2014)  (that no doctor recommended surgery,
13   and that Plaintiff pursued conservative treatment including pain management and
14   epidural injections, undermined Plaintiff's subjective complaints).

15       Second, Plaintiff argues that the ALJ "mischaracterizes or misapprehends the
16   nature of his treatment" for "the peripheral neuropathy in his feet, the degenerative
17   disc disease in his cervical and lumbar spine, and his depression and anxiety[.]"  Pl.
18   Memo. at 12.  Plaintiff argues that diabetic neuropathy has no surgical remedy, and
19   has "very little prospects for curative treatment aside from palliative measures."  *Id.*
20   However, the record does not show that any palliative measures aside from narcotic
21   pain medications and oral diabetes medications have been suggested to address his
22   allegedly disabling neuropathic pain.  *See, e.g.,* AR 404-06 (Plaintiff's medication
23   list from July 2012, showing Glipizide and Metformin for diabetes, and Morphine
24   Sulfate and Oxycodone for pain), 1481-82 (Plaintiff's medication list from March
25   2014, showing Metformin for diabetes, and Morphine SO4, Morphine Sulfate, and
26   Oxycodone for pain).  Furthermore, the ALJ appears to have actually incorporated
27   Plaintiff's subjective statements about his neuropathy into her RFC assessment.
28   / / /

At the hearing, the ALJ questioned Plaintiff as follows:

> Q     So, would it be fair to say -- that you mentioned early, about 30 minutes is your sitting tolerance, or what do you think --
> A     Well, I sit all day long.  I just got to keep changing positions.  Sometimes I'll lay down because I can't.  It just depends on how.  Like --
> Q     Okay.  When you say you sit all day are you sitting in the regular position?
> A     I have a chair.  It tilts and holds your feet up and it's kind of more comfortable, but sometimes the thing on my leg allows me and that --
> Q     Okay.
> A     So --
> Q     Wait.  Wait.  When you say you sit all day, are you saying that you sit in a tilted chair with your legs up?
> A     Yeah.

*Id*. at 81-82.  As noted above, the ALJ's final RFC assessment includes a limitation that "[Plaintiff] can sit for six hours in an eight hour day, *with the ability to elevate his feet six inches off the floor* and the ability to stand and stretch every hour, estimated to take one to three minutes per hour[.]"  *Id*. at 27 (emphasis added).

"Likewise," Plaintiff contends, "the standard treatment protocol for the pain from spinal disc degeneration is medicinal, not necessarily surgical.  The mere fact that those conditions have not required surgical or other, more invasive remedies presumes, without foundation, that such treatment modalities exist."  Pl. Memo. at 12-13.  However, Plaintiff's citations seem to contradict his apparent assertion that no other treatments exist.  *Id*. at 13 n.3 ("Medical treatment for degenerative … disc disease is typically limited to providing a structured program of *physical therapy* and medications, including *anti-inflammatory drugs, short courses of steroids such as prednisone, muscle relaxants*, and opioid pain relievers.") (emphasis added) (citations omitted); *see also Watson v. Sisto*, 2011 WL 5155175, at *5 (E.D. Cal. Oct. 28, 2011) ("Treatment for degenerative disc disease includes pain medication,

epidural injections, use of a … TENS … unit, physical therapy, and surgery"). The absence of recommendations for such treatments here supports the ALJ's finding. *See Warre v. Comm'r Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for social security benefits).

Finally, Plaintiff argues that medication prescribed to him, *i.e.*, morphine and oxycodone, "ha[ve] been held not to constitute 'conservative' treatment as would undermine the credibility of a claimant's pain." *See* Pl. Memo. at 13-14 (citations omitted). The Ninth Circuit and its district courts have generally viewed the use of narcotic pain medication as non-conservative treatment. *See, e.g., LapierreGutt v. Astrue,* 382 F. App'x 662, 664 (9th Cir. 2010) (treatment with "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Christie v. Astrue,* 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative). However, in these cases, the claimants typically used narcotic medications in conjunction with other treatments which were also not conservative. The use of narcotic medication, by itself, may be considered conservative treatment. *See Huizar v. Comm'r,* 428 F. App'x 678, 680 (9th Cir. 2011) (finding plaintiff responded to conservative treatment, including use of narcotic medications); *Higinio v. Colvin,* 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (finding that plaintiff's treatment as a whole was conservative even though plaintiff had been prescribed narcotic medication at various times); *Grisel v. Colvin,* 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014) (use of narcotic pain medication was conservative when it gave relief, and was not combined with other treatments). As noted above, Plaintiff's use of narcotic pain medications does not appear to have been in conjunction with other treatments which were also not conservative.

The Court finds that this reason is a clear and convincing reason to discount Plaintiff's credibility. However, since the Court found that the ALJ's other reasons

1 | for discounting Plaintiff's credibility are *not* clear and convincing, the Court must
2 | decide whether the ALJ's reliance on those reasons was harmless error. *Carmickle*,
3 | 533 F.3d at 1162. The relevant inquiry "is not whether the ALJ would have made a
4 | different decision absent any error," but whether the ALJ's decision is still "legally
5 | valid, despite such error." *Id*. The "remaining reasoning *and ultimate credibility*
6 | *determination* [must be] … supported by substantial evidence in the record." *Id*.
7 | (emphasis in original) (citing *Batson*, 359 F.3d at 1197). Here, given the discussion
8 | above concerning the nature of Plaintiff's treatment, the Court concludes the ALJ's
9 | credibility finding is legally valid and supported by substantial evidence.

### V.

### CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  December 21, 2015

_____

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

23